UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

MICHELLE ANDERSON,

Plaintiff,      **COMPLAINT**

-against-

NEW YORK CITY HEALTH & HOSPITALS; DONATO          Jury Trial Demanded
CIPRIANO; YVETTE VILLANUEVA; MICHAEL
KATZAB; SERENA ALTES; ANDREW CAMPBELL;
JOHN/JANE DOES 1-5,

Defendants.

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.  Plaintiff brings this action against her former employer, New York City and
Health & Hospitals ("H & H"), and officials employed by H & H and its hospitals, alleging
disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990
("ADA"), the Rehabilitation Act of 1973; the New York State Human Rights Law, N.Y. Exec. Law
§§ 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§
8-101, *et seq.* ("NYCHRL").  Plaintiff seeks compensatory and punitive damages, attorney's fees
and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this
action asserts violations of federal anti-discrimination laws and therefore raises federal questions
regarding the deprivation of plaintiff's rights.

3.  Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28
U.S.C. § 1367 to hear and decide her New York State and New York City claims, which form
part of the same case and controversy as plaintiff's federal claims under Article III of the United

States Constitution.  In connection with plaintiff's City Human Rights Law claims, a copy of the complaint will be timely provided to the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, for notice purposes.

4.  Venue is proper in the Easter District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because defendants are located in this District and the incident in question occurred in this District.

## JURY TRIAL

5.  Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## ADMINISTRATIVE REQUIREMENTS

6.  Plaintiff timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.  The EEOC issued plaintiff a right to sue letter on February 8, 2023, allowing her to bring suit within 90 days of her receipt of the letter.

## PARTIES

8.  Plaintiff is a resident of the State of New York, County of Kings

9.  Defendant H & H and its hospitals are the City of New York's public medical care delivery system.  H & H may be the recipient of federal funds, which would subject it to the Rehabilitation Act of 1973.

10.  At all relevant times, the individual defendants, Donato Cipriano, Yvette Villanueva, Michael Katzab, Serena Altes and Andrew Campbell, were officials at H & H, or its hospitals, who aided and abetted the discrimination and retaliation perpetrated upon plaintiff. Because these individuals are managers and supervisors, their conduct is imputed to H & H.

## STATEMENT OF FACTS

11.   Plaintiff Michelle Anderson was employed by H & H, H & H-Elmhurst and H & H-Queens from February 21, 2018, starting as an Office Clerk, and was constructively discharged on August 17, 2022, when she was a Personnel Representative at H &H-Elmhurst. Michelle always performed her duties in a satisfactory manner and was a qualified individual with disabilities -- asthma, allergic rhinitis & mold allergies -- who could perform the essential functions of her job with a reasonable accommodation.  Michelle has disabilities, a record of impairment, she informed defendants of her disabilities, and the defendants regarded Michelle as having disabilities.

12.   Defendants forced Michelle to work in an area infested with mold or failed to take remedial action, after Hurricane Ida in 2021 caused water damage and mold in the office.  In addition, defendants forced Michelle to clean the mold or failed to take remedial action.

13.   Defendants' actions caused Michelle to suffer substantial symptoms, including substantially impaired breathing, airway disease, and a significant immune response, as stated by her doctor.  Defendants would not grant plaintiff a reasonable accommodation.

14.   Under 42 § 12112(a) of the ADA, an employer is generally prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

15.   For conduct occurring on or after January 1, 2009, the meaning of "disability . . . shall be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A), and "[t]he term

'substantially limits' shall be construed broadly in favor of expansive coverage," 29 C.F.R. § 1630.2(j)(1).

16. Further, at all relevant times, plaintiff was "regarded as disabled" by defendants and plaintiff had a "record of the impairment" at issue.  *See* 42 § 12102(1) (the ADA defines the statutory term "disability," with respect to an individual, to mean: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.").  An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.  42 U.S.C. § 12102(3)(A).

17. The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, applies the same standards and follows the same analysis as claims under the ADA.

18. When defendants would not grant Michelle a reasonable accommodation, despite several requests, Michelle filed an internal discrimination complaint, dated June 23, 2022, documenting her concerns, the failure to accommodate, her numerous requests for assistance, a retaliatory negative performance evaluation, and her request for a transfer.  According to H & H Personnel Rules & Regulations, it was permissible to transfer Michelle to a different office, location or hospital.

19. On August 15, 2022, defendants' misconduct caused Michelle to submit a letter of resignation, which constituted a constructive discharge, because defendants forced Michelle to continue to work in an area infested with mold, forced her to clean the mold, or failed to take remedial action or grant a reasonable accommodation.

4

20.   Michelle's letter stated in part:

It has been a pleasure working with NYC Health and Hospitals/Elmhurst and Queens Hospital Center since 2018.  There were many highlights: executing my first two TJC's with Elmhurst and Queens Hospitals, working with supervisors who saw potential in me and hired me from a temporary position to a full-time position for me to be a part of the HHC family. Unfortunately, due to change of circumstances and lack of support, I cannot continue to work in Records Management.  The hazardous conditions in the file room as a result of Hurricane Ida damaging our employee files and the smell of sewage and dampness resulting in mold, allergies, and the dust of the untreated employee files have been detrimental to my asthma and health.  I have made numerous requests to have this rectified.  I have asked both of the above-mentioned in this letter for a transition of new job opportunities within and outside of Human Resources, in order to continue to be a valuable player and be a part of our upcoming TJC.  Instead, on a day I was scheduled off, my workstation was dumped into the file room that I have made well known is hazardous to my health, and has yet to be moved back.  In addition, I was given added responsibilities that would force me to continue to work in these hazardous conditions. … I will continue to perform my daily records management until my departure date.  My last day of employment is August 25, 2022.

21.   On August 15, 2022, Donato Cipriano, Human Resource Business Partner at

H & H-Elmhurst, emailed Michelle,

I was surprised to receive your letter of resignation this morning. As per our conversation earlier today, you indicated that the concerns raised in your resignation letter are with the file room and not your office space.  Please be advised that we are prepared to have the file room and your office space inspected for mold and other air quality issues.  In addition, if you are in need of a reasonable accommodation for a medical condition you can of course contact the Office of EEO at EEO@nychhc.org.  Please let me know if you would like to hold your letter of resignation in abeyance pending your contact with the Office of EEO and/or the inspection of the file room.

22.  On August 16, 2022, Michelle informed her immediate supervisor, Jennifer Adom-Koduah, orally and by email, that she was rescinding her resignation in light of the above offer.  This was accepted.

23. On August 16 and 17, 2022, Michelle informed other HR officials and managers that she was rescinding her resignation and that she had a doctor's appointment regarding her request for an accommodation.

24. On August 17, 2022, Michael Katzab, the Chief H &H Human Resources Officer, with the approval of Donato Cipriano and others, emailed Michelle:

> Central Office Human Resources is in receipt of your resignation, with your last day being Thursday, August 25, 2022.  Someone from my office will be in contact with you to assist you with offboarding.  Please be advised that your last day on-site at NYC H+H/Elmhurst will be today (8/17/22), however, you will remain on payroll through the above date.

25. On August 18 and 19, 2022, Michelle contacted Serena Altes, the EEO officer at H & H-Elmhurst, about this, but nothing was done.

26.  On August 25, 2022, Michelle emailed Michael Katzab and Serena Altes,

> I am rescinding my resignation letter that I sent on August 15, 2022.  I love working at Health and Hospitals and I want to continue to grow and keep a position within the corporation.  As per Donato's email to me on August 15, 2022, (below), I am requesting a reasonable accommodation based on my health condition.  All required forms and doctors notes will be forwarded to the EEO.

27.  On August 26, 2022, Katzab emailed Michelle,

> As per my previous email on August 17, we have received and accepted your resignation dated August 15.  Your offboarding was already processed with payroll and the HR systems, therefore, we cannot accept your request to rescind your resignation at this time.

28.  On August 26, 2022, Michelle replied,

6

As per my conversation with the office of Dr. [Mitchell] Katz [CEO of NYC HH] on August 24, 2022, you were notified about me calling of this situation that day.   You mentioned I could forward this email thread to you.  Why was I given an opportunity for accommodation and th[e]n I am being asked not to return to the office.  What was the change of heart?

29.  Human Resources official Yvette Villanueva and others were copied on this August 26, 2022 email.  Neither Katzab, Villanueva nor anyone else responded to Michelle's August 26, 2022 email until Michelle contacted the Office of the Mayor.

30.  On either August 24 or 25, 2022, Dr. Katz's Executive Secretary, Devika, told Michelle she could rescind before she was off payroll or be reinstated within one year.  On August 26, 2022, Michelle contacted Devika who told her to email Yvette Villanueva about the situation.

31. On September 6, 2022, defendants, through Katzab and the H & H Central Human Resources office, told Michelle she could not rescind her resignation, essentially terminating her.

32. During the time that Michelle was suffering from the symptoms of the mold, she complained to Donato Cipriano, Yvette Villanueva, Michael Katzab, Serena Altes, Andrew Campbell, who is the Regional Human Resources director, and others, but they failed to grant her a reasonable accommodation, a transfer, or take remedial action..

33.  Defendants, by constructively discharging Michelle on August 17, 2022, and then not accepting her rescission after a human resources official offered her an accommodation, essentially terminating her, discriminated against Michelle because of her disability, record of impairment and their regard of her as a disabled person.  Further, defendants retaliated against Michelle for complaining about discrimination and requesting a reasonable accommodation.  H

& H advertised a job opening for Michelle's position on the job-search website, Indeed, on September 16, 2022, instead of offering Michelle reinstatement.

34. As a result of the defendants' actions, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, anxiety, damage to her reputation, and financial loss.

## FIRST CLAIM

### DISABILITY DISCRIMINATION UNDER THE ADA AND THE REHABILITATION ACT

**(Against Defendant H & H)**

35. Plaintiff repeats the foregoing allegations.

36. Defendant H & H discriminated against plaintiff with respect to the terms and conditions of her employment and terminated her on the basis of her disabilities, her record of impairment, and/or what defendants "regarded as" unacceptable disabilities, in violation of the ADA and the Rehabilitation Act (if defendants are the recipients of federal funds). Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to H & H.

37. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

38. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

### RETALIATION UNDER THE ADA AND THE REHABILITATION ACT

**(Against Defendant H & H)**

39. Plaintiff repeats the foregoing allegations.

8

40. Defendant H & H retaliated against plaintiff with respect to the terms and conditions of her employment and terminated her because she requested a reasonable accommodation and complained about discrimination.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to H & H.

41. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

42. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

## DISABILITY DISCRIMINATION UNDER THE NYSHRL

### (Against all Defendants)

43. Plaintiff repeats the foregoing allegations.

44. Defendants discriminated against plaintiff with respect to the terms and conditions of her employment and terminated her on the basis of her disabilities, her record of impairment, and/or what defendants "regarded as" unacceptable disabilities, in violation of the NYSHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to H & H.

45. The individual defendants are liable for their own misconduct and/or for aiding and abetting discrimination.

46. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

47. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

## RETALIATION UNDER THE NYSHRL

### (Against all Defendants)

48.  Plaintiff repeats the foregoing allegations.

49. Defendants retaliated against plaintiff with respect to the terms and conditions of her employment and terminated her because she requested a reasonable accommodation and complained about discrimination, in violation of the NYSHRL.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to H & H.

50.  The individual defendants are liable for their own misconduct and/or for aiding and abetting retaliation.

51.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

52.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### DISABILITY DISCRIMINATION UNDER THE NYCHRL

### (Against all Defendants)

53.  Plaintiff repeats the foregoing allegations.

54.  Defendants discriminated against plaintiff with respect to the terms and conditions of her employment and terminated her on the basis of her disabilities, her record of impairment, and/or what defendants "regarded as" unacceptable disabilities, in violation of the NYCHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to H & H.

55. The individual defendants are liable for their own misconduct and/or for aiding and abetting discrimination.

55. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

57.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CLAIM

### RETALIATION UNDER THE NYCHRL

#### (Against all Defendants)

58.  Plaintiff repeats the foregoing allegations.

59. Defendants retaliated against plaintiff with respect to the terms and conditions of her employment and terminated her because she requested a reasonable accommodation and complained about discrimination, in violation of the NYCHRL.  Because the individuals who perpetrated the retaliation were managers and supervisors, their conduct is imputed to H & H.

60. The individual defendants are liable for their own misconduct and/or for aiding and abetting retaliation.

61. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

62. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

a.      Compensatory damages in an amount to be determined by a jury;

    b.      Punitive damages in an amount to be determined by a jury;

    c.      Attorney's fees and costs;

    d.      Prejudgment and other lawful interest;

    e.      Back-pay and front pay;

    f.      Such other and further relief as the Court may deem just and proper.

DATED:  March 5, 2023

*/s Richard Cardinale*

_____

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1507
Brooklyn, New York 11242
(718) 624-9391
richcardinale@gmail.com

12